## Royal Indemnity Co. v. Yearick

*William C. Reiley*, for plaintiff.
*Brett O. Feese*, for defendant.

WOLLET, *J.*, March 2, 1984—This case is before the court on defendant's preliminary objections to the complaint. The preliminary objections are in the nature of a demurrer and a motion to strike, which the court shall address first.

Defendant moves to strike the complaint on the basis that plaintiff has failed to designate which counts of the complaint are in assumpsit and which are in trespass, in violation of Pa.R.C.P. 1020 (d) (1). It is true that counts in assumpsit and trespass should be pleaded separately. Cullings v. Farmers & Merchants Trust Co. of Chambersburg, 8 D.&C.3d 764 (1978); 2 Goodrich Amram 2d §1020(d):1. Consequently, the motion to strike shall be granted. However, we agree with plaintiff that the proper remedy is to permit an amendment to the complaint. See Baird v. First Pennsylvania Bank, N.A., (No. 1), 1 D.&C.3d 665 (1976).

The remaining preliminary objection is in the nature of a demurrer. The allegations of the complaint may be summarized as follows. Defendant Wayne L. Yearick was employed as the executive director of the Jersey Shore Hospital from 1969 to 1979. His duties included the placement of insurance coverage for the hospital. At all relevant times, the hospital was insured against fidelity losses by employees under Fidelity Bond no. RYA 10 93 06. During his employment, defendant engaged in a course of conduct for his own benefit, and to the detriment and financial loss of the Jersey Shore Hospital, in the amount of $27,036.18. On December 16, 1980, the hospital submitted a claim under the fidelity bond underwritten by plaintiff, to recover the loss caused by defendant. In his criminal case, defendant Wayne L. Yearick paid to the hospital, as ordered by the court, the sum of $20,546.47, representing restitution for money and services illegally obtained from June 18, 1978, through December, 1979. This payment, made on May 19, 1981, left a balance due to the hospital of $6,489.71. On the same day, defendant Yearick obtained a release from the hospital, at which time he "knew or had reason to know of the existence of the aforesaid insurance coverage under Fidelity Bond no. RYA 10 93 06 and accepted the release for payment of less than the full amount of the injury and damage." On August 31, 1981, upon proof of loss, plaintiff-insurer paid to the hospital the balance of the fidelity loss in the amount of $6,489.71, and the hospital assigned to plaintiff-insurer any and all claims which it may have had against defendant Wayne L. Yearick. Plaintiff-insurer claims that defendant has been unjustly enriched in the amount of $6,489.71, which is due and owing to plaintiff "independently and in its capacity as assignee and subrogee of Jersey Shore Hospital."

Defendant Yearick demurs on the basis that, since the hospital released defendant from all claims before plaintiff-insurer paid the hospital the sum of $6,489.71, the hospital had no rights against defendant which it then could have assigned or subrogated to plaintiff, its insurer. It is well established that an assignee can succeed to no greater rights than those of his assignor. Himes v. Cameron County Construction Corp., 496 Pa. 637, 444 A.2d 98 (1982). Similarly, an insurer's right of subrogation against a tortfeasor is destroyed if the insured settles with or releases the tortfeasor from liability before the insurance carrier pays the claim. Service Fire Ins. Co. v. Nicosia, 28 Del. Co. 200 (1951); 92 A.L.R.2d 112-115. However, where the tortfeasor, with knowledge and notice of the payment and subrogation rights of the injured party's insurance carrier, procures a full release from the injured party, to which the carrier is not a party and does not consent, such release does not bar an action to enforce the insurance carrier's subrogation rights. Donegal Mutual Ins. Co. v. Silverblatt, 36 D.&C.2d 394 (1964), citing 92 A.L.R. 2d 124. In Donegal, the insurance carrier paid the claim of its insured before the tortfeasor obtained a release from the insured. Here, plaintiff argues that the same principles of unjust enrichment and equitable estoppel should apply where the insurance carrier pays the insured's claim after the insured has released the tortfeasor, where, as alleged here, the tortfeasor settled with knowledge of the insurance and for less than the full amount of the injury or damage. See Couch on Insurance, 2d (Rev.), §61: 195; 92 A.L.R. 2d 117-118.

The court's research has uncovered no Pennsylvania case which recognizes such a subrogation cause of action where the insurance carrier paid the

insured's claim after the insured had released the third-party tortfeasor. The opinion in Nicosia, supra, appears to state that the carrier has no right of action against the tortfeasor if the claim was paid after the insured had released the tortfeasor from liability. However, we do not consider this language in Nicosia to be binding upon the factual allegations in this case. The Nicosia court noted that the complaint did not state whether the carrier paid the claim before or after its insured released the third-party tortfeasor. Because of this omission, the Nicosia court discussed its decision in the alternative. First, it stated that, if payment was made after the insured had settled with the tortfeasor, the law gives the insurance carrier no right of action against the tortfeasor. Secondly, the Nicosia court concluded that, if payment was made before the insured settled with the tortfeasor, the insurance carrier had not given sufficient notice to the tortfeasor of its subrogation rights in order to successfully pursue a subrogation cause of action. Consequently, the Nicosia court held that, as a matter of law, the notice of subrogation rights was insufficient, and the tortfeasor's motion for judgment on the pleadings must be granted. We consider Nicosia to be distinguishable from the facts as alleged here. The Nicosia court did not address the situation, as alleged here, where the third-party tortfeasor, (defendant Yearick) by reason of his previous duties as executive director of the hospital, was fully aware of plaintiff carrier's subrogation rights, and payment was made after the insured released the tortfeasor. To the extent that the Nicosia opinion would disregard the tortfeasor's awareness of subrogation rights simply because payment was made after the release, we respectfully disagree. This court sees no reason to distinguish cases where the insurance

carrier pays before the insured settles with the torfeasor from those cases where payment was made after the insured settles with the tortfeasor. Rather, we consider the better rule to be that enunciated in Couch on Insurance, 2d (Rev.), §61: 195, at p. 253:

"A settlement by an insured with the alleged tortfeasor before the insurer makes payment of the claim under the policy terms will not bar the insurer's right of action against the tortfeasor for reimbursement where the tortfeasor settled with knowledge of the insurance and for less than the full amount of the injury or damage."

Therefore, considering as true all well-pleaded facts in the complaint, see Rosenwald v. Barbieri, 72 Pa. Commw. 49, 456 A.2d 677 (1983), defendant's demurrer must be denied.

## ORDER

And now, March 2, 1984, defendant's preliminay objections are sustained in part and overruled in part, as follows:

1. Defendant's demurrer is hereby denied.

2. Defendant's motion to strike is hereby granted.

Plaintiff is directed to file an amended complaint, designating which counts are in assumpsit and which are in trespass, within 20 days from the date of this order.